**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARYLAND MINORITY CONTRACTORS
ASSOCIATION, INCORPORATED; PRINCE
GEORGE'S COUNTY CONTRACTORS AND
BUSINESS ASSOCIATION,
INCORPORATED; COALITION FOR BLACK
ECONOMIC DEVELOPMENT,
INCORPORATED; HEZEKIAH DANIELS,
d/b/a Hezekiah's Construction and
Welding Company; RICHARD J.
COLON, d/b/a Mace Electric
Company, Incorporated; ROOSEVELT
LABOO, d/b/a DSI Construction
Company; RALEIGH NANTON, d/b/a
New World Steel Erectors; CARLTON

No. 96-1203

CRAIG, d/b/a Craig's Trucking
Company; JAMES JUSTICE, d/b/a
Justice Trucking Company; PLES
JONES, d/b/a P and J Contractors,
Incorporated,
Plaintiffs-Appellees,

v.

HAL KASSOFF; CHARLES OLSEN;
JAMES KELLY; STEVE ZENTZ,
Individually and Personally,
Defendants-Appellants,

and

FEDERICO F. PENA, SECRETARY,
DEPARTMENT OF TRANSPORTATION;
EDWARD MORRIS, Director of Civil
Rights; MARYLAND DEPARTMENT OF
TRANSPORTATION (MDOT);
MARYLAND STATE HIGHWAY
ADMINISTRATION (MSHA);
A. PORTER BARROWS, Individually
and Personally; DAVE GENDELL,
Individually and Personally;
O. JAMES LIGHTHIZER, Individually
and Personally,
Defendants.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Williams, Jr., District Judge.
(CA-93-2761-AW)

Submitted: June 17, 1997

Decided: June 15, 1998

Before WILKINS, NIEMEYER, and MOTZ, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

J. Joseph Curran, Jr., Attorney General of Maryland, Evelyn O. Can-
non, Assistant Attorney General, Omar V. Melehy, Assistant Attorney
General, STATE HIGHWAY ADMINISTRATION, Baltimore,

Maryland, for Appellants. John H. Rhines, STANCIL & RHINES, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Maryland Minority Contractors Association and others brought this action alleging discrimination against African Americans and Hispanic Americans in the administration of a federal program that provides funds for the construction of highways and mass transit facilities. The program is designed to support "the fullest possible participation of firms owned and controlled by minorities and women . . . in Department of Transportation programs." 49 C.F.R. § 23.1(a) (1997). The Plaintiffs primarily alleged that federal and Maryland state agencies and employees involved with the award and oversight of federal highway construction contracts in Maryland intentionally discriminated against businesses controlled by African Americans and Hispanic Americans in favor of those controlled by white women.

The district court dismissed all claims save those under 42 U.S.C. §§ 1981, 1983 (1994) against all Defendants except four individual state Defendants, Hal Kassoff, Charles Olsen, James Kelly, and Steve Zentz. Those state Defendants moved to dismiss, claiming, among other things, that they were entitled to qualified immunity.

In its final order, the district court did not mention qualified immunity. The district court's silence on the qualified immunity issue "subjected [the state Defendants] to further pretrial procedures, and so effectively denied [them] qualified immunity." Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir. 1997). We therefore have jurisdiction to consider this appeal, in which the state Defendants challenge the denial of qualified immunity. See id. Because we conclude that the

3

state Defendants were entitled to qualified immunity, we vacate the decision of the district court.

I

This action concerns the federally authorized set-aside program implemented by the State of Maryland. The program originated after Congress enacted the Surface Transportation Assistance Act of 1982 (Surface Transportation Act), Pub. L. No. 97-424, 96 Stat. 2097 (1983). Section 105(f) of the Surface Transportation Act provides that ten percent of the amounts authorized to be appropriated thereunder are to "be expended with small business concerns owned and controlled by socially and economically disadvantaged individuals." 96 Stat. at 2100. Black Americans, Hispanic Americans, Native Americans, Asian Pacific Americans, and certain other individuals are presumed to be socially and economically disadvantaged. See 15 U.S.C. § 637(d)(3)(C) (1994).

Congress subsequently enacted the Surface Transportation and Uniform Relocation Assistance Act of 1987 (Surface Relocation Act), Pub. L. No. 100-17, 101 Stat. 132. That statute was designed to achieve certain minority business participation goals primarily through the use of set-asides for qualified subcontractors. See S. Rep. No. 4, 100th Cong., 1st Sess. 11-12 (1987), reprinted in 1987 U.S.C.C.A.N. 66, 76. Section 106(c) of the Surface Relocation Act established a ten percent minority business goal, see 101 Stat. at 145, similar to that in the Surface Transportation Act, and added women to the list of those presumed to be socially and economically disadvantaged. See id.

States, such as Maryland, that receive federal funds under the Surface Transportation Act and Surface Relocation Act must comply with federal regulations concerning minority business participation in highway and mass transit construction contracts. A state recipient must establish annual overall minority business enterprise (MBE) participation goals on projects receiving federal funds, see 49 C.F.R. § 23.64 (1997), and must ensure that at least ten percent of money expended on federally assisted projects goes to such enterprises, absent a waiver by the Secretary of Transportation. See 49 C.F.R.

4

§ 23.61(a) (1997). The record reveals that Maryland always has met or exceeded the ten percent goal.

II

In this appeal, the state Defendants challenge the district court's denial of qualified immunity. "Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that `their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Rish v. Johnson, 131 F.3d 1092, 1095 (4th Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether an official is entitled to qualified immunity, we first "identify the specific constitutional right allegedly violated, then . . . inquire whether at the time of the alleged violation it was clearly established, [and finally we] inquire whether a reasonable person in the official's position would have known that his conduct would violate that right." Collinson v. Gott, 895 F.2d 994, 998 (4th Cir. 1990) (Phillips, J., concurring).

The specific rights allegedly violated--those to be free from purposeful racial discrimination in the making and enforcing of contracts (42 U.S.C. § 1981) and from intentional violation, under color of state law, of the right to equal protection under the law (42 U.S.C. § 1983) --are clearly established. See General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982) (§ 1981); Personnel Administrator v. Feeney, 442 U.S. 256, 281 (1979) (§ 1983). It also is well established that the racially discriminatory impact of an official policy, standing alone, rarely renders that policy unconstitutional. Rather, "the decisionmaker . . . must have selected or reaffirmed a particular course of action at least in part `because of,' not merely `in spite of,' its adverse effects upon an identifiable group." Feeney, 442 U.S. at 279.

Here, there is no evidence that the statutes or regulations were drafted so as to have an adverse impact on African Americans or Hispanic Americans. Nor is there any evidence that the state Defendants acted with discriminatory intent when administering the federal program in Maryland.

5

The Plaintiffs chiefly complain that the individual state Defendants awarded a significantly higher number of contracts to businesses owned by white women than to businesses owned by African Americans and Hispanic Americans. Even if this is true, no reasonable person in the state Defendants' position would have known that such action violated any constitutional right. The MBE program has no specific quota or goal for participation by each type of disadvantaged business. See 49 C.F.R. § 23.62 (1997); Gauvin v. Trombatore, 682 F. Supp. 1067, 1072 (N.D. Cal. 1988). There is no requirement that recipients of federal funds insure that each MBE group receives an equal share of contracts. And there is no showing that the state Defendants purposefully discriminated against any group in awarding contracts that counted towards the ten percent goal.

The Plaintiffs also contend that other practices violated their contractual and equal protection rights. Contrary to their assertions, however, there is no requirement that the state include a minimum ten percent MBE participation clause in each individual construction contract valued at more than $100,000. State officials are permitted under the regulations to waive or reduce the ten percent goal in accordance with certain procedures, and the Plaintiffs made no showing that any such reductions were intentionally targeted at African Americans or Hispanic Americans.

Further, there is not, as the Plaintiffs claim, a requirement that state transportation officials annually revise and submit to federal officials an MBE program. The pertinent regulation provides that once a state program receives federal approval, applicants "are not required to resubmit the program or to produce a new program for future applications, as long as all requirements for approval continue to be met and implementation of the program is achieving compliance." 29 C.F.R. § 23.41 (1997).

Finally, the Plaintiffs assert that the state Defendants improperly allowed MBE credit for large supply items and allowed prime contractors to falsify documents to demonstrate compliance with their MBE goals. These allegations, even if proven, do not state a claim for intentional discrimination. Improper crediting is not specifically targeted at African Americans or Hispanic Americans, and the Plaintiffs

6

do not allege any reason why these groups would be affected by the alleged policies any more than any other MBE group.

III

We conclude that reasonable persons in the state Defendants' position would not have known that their actions violated any clearly established constitutional rights of the Plaintiffs. Accordingly, the state Defendants are entitled to qualified immunity. We vacate the decision of the district court and remand with instructions to dismiss the remaining counts against the state Defendants.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

VACATED AND REMANDED

7